1

2

3

4

5

6

7

8           **UNITED STATES DISTRICT COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10          **WESTERN DIVISION**

11

12   TIMOTHY C. SCHRADER,           )   No. ED CV 06-1316-PLA
                                    )
13               Plaintiff,          )
                                    )   **MEMORANDUM OPINION AND ORDER**
14          v.                       )
                                    )
15   MICHAEL J. ASTRUE,[1]           )
     COMMISSIONER OF SOCIAL          )
16   SECURITY ADMINISTRATION,        )
                                    )
17               Defendant.          )
                                    )
18   _____)

19                        **I.**

20                    **PROCEEDINGS**

21          Plaintiff filed this action on December 4, 2006, seeking review of the Commissioner's denial

22   of his applications for Supplemental Security Income payments and Disability Insurance Benefits.

23   The parties filed Consents to proceed before the undersigned Magistrate Judge on December 29,

24   2006, and January 12, 2007.  Pursuant to the Court's Order, the parties filed a Joint Stipulation

25   on August 16, 2007, that addresses their positions concerning the disputed issues in the case.

26   The Court has taken the Joint Stipulation under submission without oral argument.

27

28   _____

        [1]   Michael J. Astrue became the Commissioner of Social Security on February 1, 2007.

## II.

## BACKGROUND

Plaintiff was born on May 25, 1974. [Administrative Record ("AR") at 75, 280.] He obtained his G.E.D. (general educational development) certificate, and has attended approximately one year of college. [AR at 12, 88, 281.] He has past work experience as a television page, gas station attendant and cook. [AR at 83, 95-101, 274, 294-95.]

On December 16, 2002, plaintiff protectively filed his applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he has been unable to work since May 1, 2002, due to bipolar disorder and ADHD, which make him unable to focus and concentrate. [AR at 12, 82, 113.]   After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on May 25, 2004, at which time plaintiff's counsel appeared without plaintiff. [AR at 271-73.] A vocational expert testified. [AR at 274-76.] On June 23, 2004, the ALJ determined that plaintiff was not disabled. [AR at 24-28.] The Appeals Council granted review of this decision and, on August 24, 2004, remanded the case back to the ALJ. [AR at 59-61.]  A subsequent hearing was held on April 1, 2005, at which plaintiff appeared with counsel.  Plaintiff's mother, Lyndell Netherton, testified on plaintiff's behalf. [AR at 277-97].  A vocational expert also testified. [AR at 294-96.] On April 21, 2005, the ALJ determined that plaintiff was not disabled. [AR at 10-15.] When the Appeals Council denied review on September 27, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 3-5.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

1    In this context, the term "substantial evidence" means "more than a mere scintilla but less

2  than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

3  adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

4  1257.  When determining whether substantial evidence exists to support the Commissioner's

5  decision, the Court examines the administrative record as a whole, considering adverse as well

6  as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

7  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

8  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

9  53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

10

11                                         **IV.**

12                          **THE EVALUATION OF DISABILITY**

13    Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

14  to engage in any substantial gainful activity owing to a physical or mental impairment that is

15  expected to result in death or which has lasted or is expected to last for a continuous period of at

16  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

17

18  **A.    THE FIVE-STEP EVALUATION PROCESS**

19    The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

20  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

21  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

22  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

23  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

24  substantial gainful activity, the second step requires the Commissioner to determine whether the

25  claimant has a "severe" impairment or combination of impairments significantly limiting his ability

26  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

27  If the claimant has a "severe" impairment or combination of impairments, the third step requires

28  the Commissioner to determine whether the impairment or combination of impairments meets or

                                            3

1    equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

2    Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

3    If the claimant's impairment or combination of impairments does not meet or equal an impairment

4    in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

5    sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

6    and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

7    past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

8    case of disability is established. The Commissioner then bears the burden of establishing that the

9    claimant is not disabled, because he can perform other substantial gainful work available in the

10   national economy.   The determination of this issue comprises the fifth and final step in the

11   sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d

12   at 1257.

13

14   **B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

15           In this case, at step one, the ALJ commented that plaintiff asserted that he had not

16   engaged in any substantial gainful activity since the alleged onset date of the disability, and the

17   ALJ did not find otherwise.[2] [AR at 12.] At step two, the ALJ concluded that plaintiff has a "severe"

18   impairment from a substance induced mental disorder. [AR at 12, 14.]   At step three, the ALJ

19   determined that plaintiff's impairment does not meet or equal any impairment in the Listing. [AR

20   at 14.] The ALJ further opined that plaintiff retained the residual functional capacity ("RFC")[3] "to

21   perform work at any exertional level, and the mental residual functional capacity set forth in the

22   decision."[4] [AR at 14.] At step four, the ALJ concluded that plaintiff was not capable of performing

23   _____

24        [2]   The ALJ also determined that plaintiff met the disability insured status requirements of the
     Social Security Act on the alleged disability onset date, and that he continued to meet them through
25   March 31, 2004. [AR at 12.]

26        [3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
     Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).
27

28        [4]   Although the ALJ summarizes Dr. John S. Woodard's findings, which contain nonexertional
     limitations, the ALJ does not clearly indicate whether he is basing his decision on those findings. The

1  his past relevant work. [AR at 14.]  At step five, the ALJ found, using the Medical-Vocational

2  Guidelines and the vocational expert's testimony, that there are a significant number of jobs that

3  plaintiff is capable of performing. [AR at 15.]  Accordingly, the ALJ determined that plaintiff is not

4  disabled. [AR at 14-15.]

5

6                                                     **V.**

7                                      **THE ALJ'S DECISION**

8          Plaintiff contends that the ALJ: (1) failed to properly consider the treating physician's

9  opinion of disability; (2) failed to properly consider the consultative evaluation; and (3) failed to

10 properly consider plaintiff's obesity.  Joint Stipulation ("Joint Stip.") at 3.  The Court agrees with

11 plaintiff, and remands the matter for further proceedings.

12

13 **A.      TREATING PHYSICIAN'S OPINION**

14         Plaintiff argues that the ALJ failed to properly consider the treating physician's opinion of

15 disability.   Specifically, plaintiff asserts that the ALJ failed to provide specific and legitimate

16 reasons for rejecting the plaintiff's marked and extreme limitations as determined by plaintiff's

17 treating physician, Dr. Jeremiah Umakanthan.  Joint Stip. at 3-6.

18         In evaluating medical opinions, the case law and regulations distinguish among the opinions

19 of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

20 examine but do not treat the claimant (examining physicians); and (3) those who neither examine

21 nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; Lester,

22 81 F.3d at 830.  Generally, the opinions of treating physicians are given greater weight than those

23 of other physicians, because treating physicians are employed to cure and therefore have a

24 greater opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th

25 Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812

26 _____

27 "mental residual functional capacity set forth in the decision" is not clear. [AR at 14.]  The ALJ is
   directed upon remand to clarify whether he is adopting or rejecting Dr. Woodard's assessment of
28 plaintiff's mental residual functional capacity.

1  F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's opinion is entitled to great

2  deference, it is not necessarily conclusive as to the question of disability.  Magallanes, 881 F.2d

3  at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)).  Where the treating

4  physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons.

5  Lester, 81 F.3d at 830.  Where the treating physician's opinion is contradicted, the ALJ may reject

6  it in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth

7  specific, legitimate reasons for doing so that are based on substantial evidence in the record.

8  Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).

9        Here, the ALJ's finding that the Work Capacity Evaluation (Mental)[5] performed by plaintiff's

10  treating physician, Dr. Umakanthan, was "the usual egregiously accommodative, exaggerated,

11  unsupported document seen from employees of [the] San Bernardino County Department of

12  Mental Health," is not at all supported by the record.[6]  [AR at 27, 247-48.]  The ALJ merely

13  generalized and speculated regarding the medical practices of the employees of the San

14  Bernardino County Department of Mental Health. [AR at 27.]  He lumped together all employees

15  of this agency, and made unsupported assertions about the probative value of the Mental Residual

16  Functional Capacity evaluation form[7] without showing evidence of any actual impropriety by this

17  particular physician.[8]  See Lester, 81 F.3d at 832 (quoting Ratto v. Secretary, Dept. of Health and

18  Human Services, 839 F.Supp. 1415, 1426 (D.Or.1993) ("The Secretary may not assume that

19  doctors routinely lie in order to help their patients collect disability benefits.")).  The ALJ cites no

20

21        [5]  The ALJ refers to the Work Capacity Evaluation (Mental) as the "Mental Residual
   Functional Capacity Evaluation" in his decision dated June 23, 2004. [AR at 27.]

22

23        [6]  The Court notes that the ALJ did not specifically mention the evaluation by Dr. Umakanthan
   in his decision dated April 21, 2005.  However, the ALJ incorporated by reference his prior decision

24  dated June 23, 2004, wherein he made the quoted statement, and made that prior decision "the
   decision on remand as supplemented herein." [AR at 12.]

25
        [7]  The form was signed by plaintiff's treating physician, Dr. Umakanthan. [AR at 248.]
26

27        [8]  The ALJ suggests that Dr. Umakanthan did not refer to the concern of substance abuse in his
   evaluation of plaintiff. [AR at 27.]  However, as plaintiff notes (Joint Stip. at 5), the face of the Work

28  Capacity Evaluation (Mental) form clearly states that the assessment should be made "apart from the
   effects of drug or alcohol use or abuse." [AR at 247.]

evidence to support his bald assertion, making it impossible for plaintiff to respond to the statement, and impossible for the Court to determine if the ALJ's conclusion is based on substantial evidence.

That the form is a check-the-box form can be a specific and legitimate reason for rejecting a physician's opinion when that opinion lacks objective and clinical support. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996). However, in this case, Dr. Umakanthan treated plaintiff for an extended period as evidenced by Dr. Umakanthan's notes contained in the medical record. [AR at 142-79.] Based on the length of the treatment and Dr. Umakanthan's experience with the plaintiff, Dr. Umakanthan had the broadest range of knowledge regarding plaintiff's medical condition, which is supported by the record. See Smolen, 80 F.3d at 1279; see also 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2) (Treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). Accordingly, the ALJ erred by not giving specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Umakanthan's evaluation of plaintiff. As such, remand is warranted on this issue.

## B.   PLAINTIFF'S OBESITY

Plaintiff argues that the ALJ failed to consider the impact of obesity at various stages of the disability determination. Joint Stip. at 12.

Obesity is no longer a listed impairment. See Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 Fed. Reg. 46122 (1999) (effective October 25, 1999) ("We are deleting listing 9.09, "Obesity," from appendix 1, subpart P of part 404, the "Listing of Impairments" (the listings)."). However, the Social Security Administration ("SSA") responded to various concerns about the potential effects of removing all reference to obesity from the listings by "adding guidance about the evaluation of claims for benefits involving obesity to the

1  prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings." Id. at

2  46123.  The SSA clarified its intent with respect to the ALJ's consideration of obesity:

3          Our purpose in making these changes is to ensure that adjudicators
           understand that we consider obesity to be a medically determinable
4          impairment that can be the basis for a finding of disability, and that
           obesity in combination with other impairments must be considered
5          when evaluating disability at the listings step and other steps of the
           sequential evaluation process.

6  Id. at 46123.  Moreover, Social Security Ruling[9] 02-01p[10] states that adjudicators must consider

7  the effects of obesity when assessing a claim at all steps of the sequential evaluation process.

8  SSR 02-01p, 2000 WL 628049, *1 (2002).

9          Here, the consultative physician, Dr. John S. Woodard, diagnosed plaintiff with obesity on

10  March 8, 2005. [AR at 267.]  Plaintiff's height is reported as somewhere between 6'0" and 6'1" and

11  his weight as anywhere from 200 pounds to 275 pounds. [AR at 81, 139, 183.]  Although the ALJ

12  noted Dr. Woodard's diagnosis of obesity in his decision [AR at 12, 13], the ALJ did not evaluate

13  plaintiff's obesity in combination with his other severe impairment to determine whether he met

14  or equaled the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4.

15          Even if the Court were to assume that the ALJ had concluded that obesity, either alone or

16  in combination with plaintiff's other severe impairment, failed to meet or equal any of the listed

17  impairments, the ALJ nevertheless completely omitted any consideration of obesity in the other

18  steps of the sequential evaluation process.  The ALJ failed to assess the effect of the plaintiff's

19  obesity upon his capacity to work. Stack v. Barnhart, 327 F.Supp.2d 1175, 1178 (C.D. Cal. 2004)

20  (citing Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) ("When there is evidence of obesity,

21  the ALJ must determine the effect of the claimant's obesity upon her other impairments, her ability

22  to work, and her general health.")).  Furthermore, the Regulations state that adjudicators are to

23

24  _____

25      [9]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute
    Social Security Administration interpretations of the statute it administers and of its own regulations,"
26  and are given deference "unless they are plainly erroneous or inconsistent with the Act or
    regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).
27

28      [10]   SSR 02-01p, Evaluation of Obesity, was published in the Federal Register on September 12,
    2002.  That Ruling superseded SSR 00-3p, which was first published on May 15, 2000.

1  consider the effects of obesity "not only under the listings but also when assessing a claim at other

2  steps of the sequential evaluation process, including when assessing an individual's residual

3  functional capacity." Revised Medical Criteria, 64 Fed. Reg. at 46124. In determining that plaintiff

4  could "perform work at any exertional level with respiratory precautions observed due to some

5  indications of asthma," the ALJ never even mentioned the impact of plaintiff's obesity on his ability

6  to work. [AR at 12.] The ALJ had a duty to determine the effect of plaintiff's obesity at the various

7  steps of the sequential evaluation process, including a consideration of the impact of plaintiff's

8  obesity on his residual functional capacity. See Stack, 327 F.Supp.2d at 1179. The ALJ's failure

9  to properly consider plaintiff's obesity at each step of the sequential analysis warrants remand.

10  **VI.**

11  **REMAND FOR FURTHER PROCEEDINGS**

12  As a general rule, remand is warranted where additional administrative proceedings could

13  remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

14  Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

15  In this case, remand is appropriate for proper consideration of the opinion of plaintiff's treating

16  physician, Dr. Umakanthan, as well as plaintiff's obesity.[11] The ALJ is instructed to take whatever

17  further action is deemed appropriate and consistent with this decision.

18  Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

19  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

20  for further proceedings consistent with this Memorandum Opinion.

21

22  DATED: August __, 2007

PAUL L. ABRAMS
23  UNITED STATES MAGISTRATE JUDGE

24

25

26

27  [11] As the ALJ's consideration on remand of the treating physician's opinion and plaintiff's obesity may impact the significance of the consultative evaluation performed by Dr. John S. Woodard, the Court will exercise its discretion not to address plaintiff's second issue at this time. Rather, Dr.
28  Woodard's opinion should be re-examined in light of the remand order. See also, fn 4, supra.